UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NÉCOLE KEY,<br><br>                    Plaintiff.<br>v.<br><br>BARRY WHITE FAMILY TRUST et al.,<br><br>                    Defendants.<br><br>RODNEY OLIVER p/k/a Rodney O<br><br>[Proposed] Intervenor Defendant | Case No. 1:25-CV-03602-DLC<br><br>MEMORANDUM OF LAW IN SUPPORT<br><br>OF OLIVER'S MOTION TO INTERVENE<br><br>[Notice of Motion and Declarations of Rodney Oliver, Anterine Jackson and Kenneth D. Freundlich filed concurrently herewith together with [Proposed] Order] |

## RODNEY OLIVER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO INTERVENE

### I.    INTRODUCTION

The Court is well acquainted with the history of this litigation, and the litigation Rodney Oliver p/k/a Rodney O ("Oliver" or "[Proposed] Intervenor-Defendant") is defending brought by the Barry White Trust for copyright infringement against Oliver, *The Barry White Family Trust v. Cooley et al*, 1:24-cv-07509 (the "First Action").[1] In defending the First Action, as fully demonstrated in the Declaration of Rodney Oliver dated November 10, 2025 submitted herewith ("Oliver Decl.") , Oliver made the admittedly regrettable (in hindsight) choice of letting his rights manager, Plaintiff Nécole Key ("Key") control the case. Oliver trusted Key in her role as his fiduciary and agent to properly manage the case and handle the Court system in a manner compliant with the Court's rules. Oliver Decl. ¶ 2.

---

[1] That case is in its expert phase with expert reports and rebuttals having been exchanged to be followed by expert depositions in New York City. The parties anticipate motions for summary judgment to be filed once expert depositions are completed.

Not surprisingly, Plaintiff in the First Action moved for sanctions against Oliver based in large part on the troubling conduct Key engaged in while still Oliver's agent. The Court, while denying sanctions, admonished Oliver not to engage in any "further misconduct." First Action, Dkt. No. 182.

Nécole Key is a vexatious litigant, powered by ChatGPT, who will not go away without the intervention of the Court. Key's recent self-styled, indecipherable Motion For Judicial Notice Of Agency Termination And For Equitable Relief To Halt Obstructionist Conduct ("Key's Motion"), attached as **Exhibit A** to the Declaration of Kenneth D. Freundlich dated November 10, 2025 submitted herewith, is based entirely on a fraudulent and forged document which Key alleges Oliver's associate "Re" (Anterine Jackson) drafted, giving Key 20% of Oliver's interest in his music publishing including "Everlasting Bass". This is the first time Key has ever claimed twenty percent of Oliver's money; in the past it has always been an alleged oral agreement for ten percent (10%). This is one example of the ever shifting, frivolous nature of Key's claims here; her inconsistency with what she claims to be owed speaks volumes about her motives here.

Although Key represents that Key's Motion was filed via ECF, no corresponding entry appears on the Court's PACER docket, and no docket number has been assigned. It is simply another frivolous motion filed by Key in both actions.[2]

As the Declaration of Anterine Jackson dated November 7, 2025 ("Jackson Decl.") and the Declaration of Rodney Oliver dated November 10, 2025 ("Oliver Decl.") make clear the alleged twenty percent agreement (which Key has filed in this case, First Action, Dkt. No. 60), is a fraud. Oliver never saw this document, his */s/* signature is a forgery, and Jackson has never

---

[2] All of the filings in the First Action were created by and filed by Ms. Key.

seen the document let alone ever worked with Oliver on any aspect of his deal with Key. Jackson Decl. ¶ 2, Oliver Decl. ¶ 3.

Basing the Key Motion on a forged document and Key's continuing abuse of the Court's process here and in the First Action, is a basis to dismiss Key's Complaint here.

Moreover, the master purchase agreement was a sham agreement created by Key to circumvent the Court's denial of Key's motion to intervene (First Action, Dkt. 62).

In any event, this lawsuit represents the detritus left by Key's attempts to inject herself in these matters even though she has been terminated as Oliver's agent and any agreement from which she derives any rights has been terminated. Her insinuation into this case is both officious and meddlesome. It is also bad faith and likely sanctionable.

Accordingly, Oliver intervenes and requests permission to file the Motion to Dismiss attached as **Exhibit C** to the Freundlich Decl.

## RELEVANT FACTS

### A.   Key Was Oliver's Agent

Oliver is a prolific songwriter and performer whose catalog includes the musical composition and sound recording called "Everlasting Bass". Oliver appointed Lady Key Management (Key's management company) as his rights manager under an oral agreement that it would be paid ten percent (10%) of what he made from his music and sound recording licensing.[3] The agreement had no term and was therefore terminable by Oliver at any time. *See Consol. Theaters, Inc. v. Theatrical Stage Emp. Union, Loc. 16*, 69 Cal. 2d 713, 727 n.12 (1968) (noting that [c]ontracts of employment wherein the only consideration is the services to be

---

[3] Key's claim to now be entitled to 20% is contradicted by the facts. Key received 10% of the upfront advance for the most lucrative deal Oliver ever made for his songs, the seven figure Sony Music Publishing Deal described in Section B below. This 20% Forgery which does not bear Oliver or her signature is pure fraud on Oliver and the Court.

performed thereunder and which are silent as to duration, are terminable at will upon reasonable notice [w]ithout regard to duration" (citations omitted)), *Zimco Restaurants, Inc. v. Bartenders & Culinary Workers Union, Loc. 340, AFL-CIO*, 165 Cal. App. 2d 235, 245 (1958) (highlighting the general rule that "contracts contemplating continuing performance for an indefinite time … are terminable at will by either party" (citations omitted)).

Key was his disclosed agent to third parties, charged with the fiduciary duty to act on his behalf and only *consistent with his wishes as her principal* and owner of the rights she was representing. *Sequoia Vacuum Sys. v. Stransky*, 229 Cal. App. 2d 281, 287 (Ct. App. 1964) (stating that "[e]very agent owes his principal the duty of undivided loyalty… [,] he may not undertake or participate in activities adverse to the interests of his principal." She could not act on her own.

Key, on behalf of Oliver negotiated licenses to Epic Records for the use of Oliver's song and recording of "Everlasting Bass" in a song titled "Like That".

### B. Oliver Makes a Publishing Deal With Sony Music Publishing LLC ("SMP") Based On The Success Of The Kendrick Lamar Track "Like That"

When "Like That" was released to great success, Key sought a music publishing deal based on the expected earnings of "Everlasting Bass" largely due to its inclusion in "Like That". Oliver entered into a seven-figure deal from Sony Music Publishing LLC ("SMP"). SMP was directed to pay Lady Key Management $80,000 as her agreed ten percent (10%) share of the upfront monies paid to Oliver by SMP.[4] The deal referenced in the First Action and a significant portion of the consideration payable by SMP was withheld pending the determination in the First Action.

### C. Key Steers Oliver Aground In Case 1

---

[4] She accepted this money and not twenty percent which is the amount of commission she later claims she is owed based on her forged document.

Key took control of Oliver's defense in the First Action and appointed a law firm to represent Oliver in the case. On March 5, 2025, Key turned on Oliver's lawyers and sought to intervene herself in the First Action. Shortly thereafter the law firm moved to withdraw, leaving Oliver as a *pro se* defendant being advised behind the scenes by his trusted agent Key. In granting the motion to withdraw and denying Key's motion to intervene, the Court observed the "concerning possibility" that "Key has attempted to step into the role that would properly be played by an attorney to the defendants". First Action, Dkt. No. 62. The court warned that "Key is not authorized to practice law and may not undertake the responsibility of an attorney." Id. Despite the denial of Key's motion to intervene, Key continued to assist Oliver as a lawyer would do in filing his *pro se* documents and Oliver blindly trusted her to do the right thing, which he deeply regrets now. Oliver Decl. ¶ 4.

On April 29, 2025, Key exploited Oliver's trust and improperly influenced him into asserting counterclaims against the Barry White Trust that lacked a factual foundation and were driven by Key's own self-serving motives rather than Oliver's independent judgment. These allegations, as they pertain to the Barry White Trust, mirror the complaint Key filed here. In its allegations against Barry White Trust, and in the context of this case, their counsel Dorothy Weber, Key was the sole draftsman of the affirmative defenses and counterclaims in the First Action and the sole drafter and filer of this action. Even after Oliver advised Key to withdraw this action, she refused. Oliver Decl. ¶ 5.

Key's steerage of Oliver's defense was so unhinged that as the Court aptly put it in denying sanctions: "[A] default judgment may have been entered against Oliver if his course of conduct had continued.". First Action, Dkt. No. 182, page 23.[5]

D.  **Key Manufactures Standing And Files A New Lawsuit In Her Own Name**

---

[5] Indeed, this unhinged conduct continued by Key.

Undeterred by the Court's Order denying her intervention in the First Action, Key concocted a way for her to have "standing" to bring a new case in her own name based on a terminable assignment of one-half the copyright in Oliver's master recording of "Everlasting Bass." This document, newly minted by Key, assigned such rights to Key without any valid consideration whatsoever. Even as a co-owner of the copyright in the "Everlasting Bass" master recording, Oliver had the absolute right to license the master subject only to a duty to account to Key and vice versa. *See, Oddo v. Reis*, 743 F.2d 630, 633 (9th Cir. 1984).

As Oliver now knows, he was defrauded into entering into this document because contrary to the position Key is taking in this case, Key promised he could undo the assignment in toto and remove her from this case, plus there was no consideration for the assignment which makes it likely voidable. *Bleecher v. Conte,* 29 Cal. 3d 345, 350 (1981) (noting the principle that "[i]f a party is not assuming a legal duty in making a promise, the agreement is not binding as a bilateral contract" citing *Mattei v. Hopper,* 51 Cal. 2d 119, 122 (1958). Accordingly, the purported co-ownership agreement is void or unenforceable due to its lack of mutual obligations.

Because he relied on Key as his fiduciary at the time, Oliver did not really understand that Key might later act against his wishes as his agent and as his former agent and take the position that despite his termination of the assignment, and Oliver's decision not to pursue this action now, Key could still assert rights in his business matters including this lawsuit. Oliver Decl. ¶ 6. In fact, Key told Oliver many times that he could terminate Key's ownership at any time and Key represented in at least one text message that "…[Oliver is] the one that can terminate at any time ….". Oliver believed that this assignment was temporary and entirely terminable by him upon thirty days' notice, after which  Key would have no rights whatsoever in his master – including a right to maintain a lawsuit in her own name – especially since, as turned out to be the case, Oliver chose not  to prosecute this lawsuit at this time. Oliver Decl. ¶ 6.

Armed with this conditional assignment, on April 29, 2025, Oliver (at Key's direction and with her drafting) and Key, as Plaintiffs, filed this largely indecipherable pleading for what

appears to be copyright infringement and a laundry list of torts, against the participants in "Like That" (including the artists the record labels) and the Barry White Trust (without any evidence whatsoever that it was not involved in "Like That") as well as two of the lawyers representing some of those parties. Second Action, Dkt. No. 1. The case was not something that Oliver would have filed at this time in the backdrop of the First Action, particularly those claims against Barry White Estate and its counsel. It was and continues to be Oliver's sole decision as principle, whether to file the case and whether to withdraw it or continue it. Oliver Decl. ¶ 7.

The claims against the Barry White Estate mirrored those in the counterclaims Key filed for Oliver in the First Action and as to the Barry White Estate and its counsel, and Oliver, now free from Key's wrongheaded advice, sees there is no known evidence to support the counterclaims in the First Action or the claims asserted against the Barry White Estate here.[6]

E.  **Oliver Hires Freundlich Law And Oliver's Legal Path is Set Straight**

On or about August 19, 2025, Oliver retained Freundlich Law APC as his counsel and shortly thereafter Oliver (i) formally terminated Key as his agent, (ii) terminated the Master Assignment, (iii) dismissed himself as a Plaintiff in this case without prejudice, and (iv) proceeded in good faith to meet and confer and conduct the litigation in the First Action. Oliver Decl. ¶ 8.

Oliver asked Key numerous times to dismiss her case here like he did, but she has steadfastly refused to do so, preferring to continue to harass and intervene in Oliver's business and to wreak general havoc on the group of attorneys involved in this case. Most recently, Key has escalated matters by filing incomprehensible motions and letters with the Court with the Key

---

[6] Oliver has asked counsel in Case I to consent to his dismissal of the Counterclaims in the First Action. For some inexplicable reason, they have declined to enter to that Rule 41 stipulation even though Oliver has no intention of prosecuting the counterclaims in the First Action. To the extent lawyers for the Barry White Trust seek to extend any discovery or depose Oliver on the Counterclaims, Oliver's counsel will object because the offer is out for acceptance for the Counterclaims to be dismissed.

Motion being the most egregious being based on a forgery, and in an email threatening Oliver and his counsel. Oliver Decl. ¶ 9.

Key has no standing to bring this case because the assignment on which she bases her claim of standing is void for lack of consideration. Moreover, to the extent it is enforceable, Oliver terminated her ownership of any copyrights, from which Key's rights derive and Key has been instructed by her now former principal to cease and desist from prosecuting this case. Furthermore, given Key's persistent abuse of the Court's process here and in the First Action, the Court should simply strike the Complaint from the docket.

Oliver has been and continues to be harmed by Key's unconscionable conduct in pursuing this baseless claim for which she has no standing. Oliver Decl. ¶ 10.

Oliver, therefore, moves to dismiss Key's case with prejudice.

## II.     ARGUMENT

### A.     THE COURT SHOULD PERMIT INTERVENTION

#### 1.     The Court Should Permit Intervention as a Matter of Right

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right where: an applicant (1) timely claims (2) an interest relating to the property or transaction which is the subject of the action and (3) is so situated that the dispositions of the action may as a practical matter impair or impede the applicant's ability to protect that interest, (4) unless his or her interest is adequately represented by existing parties. *AB ex rel. CD v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 155 (S.D.N.Y. 2004) (citing *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990).

Timeliness of a motion to intervene is assessed by considering the totality of the circumstances. *Red Rock Sourcing LLC v. JGX, LLC*, No. 21 Civ. 1054 (JPC), 2023 WL 1468980, at *4 (S.D.N.Y. Feb. 2, 2023); *see also Sec. & Exch. Comm'n v. Berman*, No. 20 Civ.

10658 (LAP), 2021 WL 2895148, at *2 (S.D.N.Y. June 8, 2021) (finding motion to intervene filed within three months after being served with complaint timely); *Olin Corp. v. Lanora Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) (granting motion for intervention as of right even where "discovery deadlines have come and gone[.]").

Here, Oliver has timely filed a Motion to Intervene to bring this Motion to Dismiss here. There has been little progress in the case – the Defendants have not all been served and none have responded to the Complaint. With the purported filing of the Key Motion ___ days ago , Oliver moved swiftly to intervene here.

The second and third requirements of Rule 24 (a) (2) are also met because Oliver has an interest here in defending himself from a fraudulent allegation and a forged document and this case is also standing in the way of funds flowing to him from the "Like That" licenses. *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 134 (1967) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . .").

As to the final prong, Oliver's interest vis a vis Key is plainly not adequately represented. Despite once serving as his agent, Key's conduct has been the opposite of fiduciary. She has misled him into executing documents under false pretenses, forged his name on others – purporting to double her compensation without Oliver's consent or even knowledge, and taken litigation positions that directly undermine his stake as a rightsholder. Far from protecting his interests, Key has acted in open hostility to them, using her purported agency as a means of advancing her own agenda and exposing him to legal risk that he never sanctioned. Oliver simply cannot rely on Key or any party to safeguard his position. Thus, Oliver's interests are not and cannot be adequately represented by any existing party.

### 2.  In the Alternative, Permissive Intervention is Appropriate

Permissive intervention is appropriate where (1) the motion is timely; (2) the proposed intervenors have "a claim or defense that shares with the main action a common question of law or fact"; and (3) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

Here, the Court should permit intervention for the purpose of filing a Motion to Dismiss. As discussed above, the Motion is timely. Also, it is apparent that Oliver's defense to Key's continued attempt to claim a right to sue, shares the same questions of law and fact with the other defendants.

Finally, given the timing of this Motion vis a vis the current status of this matter, this Motion will assist in the adjudication of the parties' rights here and certainly not be a hindrance or delay or prejudice to the parties in any way.

### III.   CONCLUSION

For the foregoing reason, Oliver requests the Court grant this Motion to intervene and permit Olier to file the Motion to Dismiss which is attached as **Exhibit B** to the Freundlich Decl.

Dated: November 10, 2025

                                        FREUNDLICH LAW, APC

                                        BY: /s/ Kenneth D. Freundlich
                                        Kenneth D. Freundlich
                                        16133 Ventura Blvd. Ste. 645
                                        Encino, CA 91436
                                        *Attorneys for [Proposed] Intervenor Defendant Rodney Oliver p/k/a Rodney O*