# United States District Court

## Southern District of New York

November 14, 2025

Hon. Denise L. Cote

United States District Judge

500 Pearl Street

New York, NY 10007

Re: **The Barry White Family Trust v. Rodney Oliver, No. 1:24-cv-07509 (DLC)**

**Key v. Barry White Family Trust, et al., No. 1:25-cv-03602 (DLC)**

Dear Judge Cote:

I have read the Court's November 13, 2025 Order, am working on my oppositions, and will comply fully. I also write in light of the Court's November 12, 2025 Order discontinuing case 1:24-cv-07509 without prejudice to restoration by December 12, 2025. Because several filings and communications occurred in rapid succession leading up to that Order, I respectfully provide this brief summary so the Court has a clear record of what preceded it.

1. October 21 Email: Counsel's Stated "Job" Is to Remove Me

On October 21, 2025, Mr. Freundlich emailed me, Mr. Oliver, and his colleague stating that he is "Rodney's lawyer period," that I am "no longer authorized" for any purpose, and that "part of my job is to get you out of the middle of his case and anything to do with Everlasting Bass or the Kendrick Lamar derivative, including handling your baseless case for which you do not have standing… We once again implore you for everyone's sake to dismiss your action." From my perspective, this confirmed that removing me—not resolving Trust standing—had become an explicit objective.

2. Sony-Funded Work Directed at Me Personally

On November 6, 2025, I received an invoice produced by Sony Music Publishing showing payment of $55,391.60 to Mr. Freundlich's firm in October. The entries include "research Rule 11 and separate claim against Key," "drafting complaint against Necole," "draft motions… to dismiss Key lawsuit," "prepare for N. Key meet and confer," coordination with Trust counsel, and work on intervention filings. I raise this only because it reflects a third-party funding structure that appears focused on litigation against me personally, while the Court has emphasized resolving threshold standing and authority.

3. November 3 Meet-and-Confer and Audio Recording

After a November 1 threat of fees and sanctions unless I appeared on extremely short notice, I attended a November 3 meet-and-confer. Three to four attorneys questioned me; I re-sent and duplicated approximately 2,000 pages I had already produced on September 24 and October 1. No specific deficiencies were identified.

On the call, four attorneys collectively demanded "everything I have." At one point, Mr. Freundlich interrupted Ms. Weber and accused me of spoliation regarding a document that was already on the docket when I moved to intervene, which defeats any deletion theory. I followed up by email requesting correction of that accusation and withdrawal of master-income holds; those requests have not been addressed. I also produced the requested Kobalt emails on November 7 and have not received confirmation of review. I respectfully ask that the Court obtain and review the audio of the November 3 call; I advised the Clerk on November 10 that I am prepared to provide it by any method the Court prefers.

4. November 10 Discovery Letter (Trust Case) and November 11 Standing Filing (My Case)

On November 10, 2025, in case 1:24-cv-07509, I filed a discovery letter-motion and Notice to the Clerk seeking: (i) a protective order, (ii) confirmation of full subpoena compliance, (iii) clarification that no master-side claims were pending, (iv) a short, cabined protocol for any further discovery, and (v) in camera review of the November 3 audio.

On November 11, 2025, in my case 1:25-cv-03602, I filed an emergency notice of motion and letter-motion requesting that the Court preserve the December 5 schedule and require the Trust to produce basic standing documents: a Certification of Trust, trustee appointment, probate/funding documentation, and any 17 U.S.C. § 204(a) assignments, along with limited disclosures regarding litigation funding and shared-work arrangements. I attached a Trust Standing & Authority Packet, the Sony invoice, text messages and emails reflecting my authorization from Mr. Oliver, and other materials relevant to standing and chain of title. The purpose was narrow: to keep the litigation aligned with the Court's standing-first framework.

5. Counsel's Response: Dismissal, Rule 11, and Intervention

Immediately after my standing-focused filing, Ms. Weber submitted: (i) a motion to dismiss my case, (ii) a Rule 11-related request, and (iii) a declaration supporting Mr. Oliver's intervention. None of these papers supplied the standing documents Your Honor asked the parties to address; instead, they renewed efforts to remove me.

On November 10, 2025, Mr. Oliver's counsel also filed a motion to intervene in my case, with declarations from Mr. Oliver, Ms. Jackson, and Mr. Freundlich. These papers portray me as vexatious, claim I acted without authorization, and suggest forgery or manipulation—assertions contradicted by contemporaneous emails and texts where Mr. Oliver reviewed, approved, and in some cases initiated the very work now being challenged. I will attach those communications in my oppositions.

From my perspective, the proposed intervention is untimely and prejudicial. Mr. Oliver previously withdrew, and now seeks to re-enter solely to litigate a private contract issue—purported "termination" of my § 204(a) assignment—on the eve of the Court's standing calendar. Any such dispute can be handled via Rule 17(a)(3) ratification/joinder or in a separate proceeding; standing is measured at filing, and a later attempted termination cannot retroactively erase my co-owner enforcement rights for the period pled.

6. Purpose of the Ownership Transfer

The April 24, 2025 ownership transfer was not created for litigation. It concerned a separate copyright interest that was not then in suit. It reflected the reality of years of work I had already completed: correcting Mr. Oliver's registrations, rebuilding his catalog, renegotiating terms, securing licensing opportunities (including "Like That"), and substantially increasing the value of his master and publishing rights. For years I did this work without salary—learning the systems, conducting audits, correcting long-standing split errors, and setting up proper payout channels. That work directly enabled the income now at issue.

Mr. Oliver voluntarily transferred a 50% interest in the Everlasting Bass master so that I could continue protecting the catalog and the deals I had negotiated. The purpose was to stabilize and safeguard the value created, not to manufacture standing.

7. Settlement Notice, Discontinuance, and Next Steps

On November 11, 2025, the Trust filed a letter stating that case 1:24-cv-07509 had been settled and requested 60 days for settlement proceedings. The Court issued its discontinuance order the next day. I do not comment on the substance of any settlement; I simply note this timing relative to my standing requests and the subsequent motions directed at me personally.

I am preparing oppositions to all motions filed against me and will address the accusations point-by-point on the written record. I will continue to comply with all Court orders in my own

matter, including the December 5 schedule. My goal remains clarity as to who has authority to bring claims and who is responsible for the ongoing holds on the Everlasting Bass master.

Respectfully, I also believe the Court should not be used as a vehicle to pressure a non-lawyer rights-manager out of litigation simply because she insisted on proper standing, chain of title, and lawful payment flows. The money Mr. Oliver is now waiting on is not money that was already in the system; it exists because I rebuilt his chain of title, proved the value of his catalog, and held the line when others resisted paying. If corporate-funded counsel may use the law to manufacture claims that strip away that work, I am simply asking to be allowed to use the law correctly—to protect what I built, and to ensure that any party invoking this Court's authority can show the standing and chain of title Your Honor has already said must be addressed.

Thank you for your time and consideration.

Respectfully submitted,

/s/ Nécole Key

Nécole Key (pro se)

necolekey@gmail.com

626-598-6647

# EXHIBIT A



---

[1] EXHIBIT A July 29, 2025 text from Rodney Oliver before he retained his new counse

626-598-6647

# EXHIBIT B

On Tue, Oct 21, 2025 at 12:02 AM Kenneth Freundlich <ken@freundlichlaw.com> wrote:
[Quoted text hidden]

---

**Kenneth Freundlich** <ken@freundlichlaw.com>  Tue, Oct 21, 2025 at 12:39 AM
To: Nécole Key <necolekey@gmail.com>, Hugh Rosenberg <hugh@freundlichlaw.com>, Rodney <rodneyocali@yahoo.com>

I am Rodney's lawyer period.

You are no longer authorized on his behalf to act for any purpose.

And now part of my job is to get you out of the middle of his case and anything to do with Everlasting Bass or the Kendrick Lamar derivative which includes handling your baseless case for which you do not have standing nor any substantive ground.

You were subpoenaed in the first case, and we appreciate your compliance with that. You have done nothing but to intervene where you don't belong and complicate this matter needlessly. That includes making it more expensive for Rodney.

We once again implore you for everyone's sake to dismiss your action.

All of Rodney's rights are reserved and none are waived.

Kenneth D. Freundlich
FREUNDLICH LAW, APC
16133 Ventura Blvd. Suite 645
Encino, CA 91436
ph1:(818) 377-3790
ph2:(310) 275-5350
ken@freundlichlaw.com

P Please consider the environment before printing this e-mail

The information contained in this e-mail transmission, including any previous messages or attachments to it, is intended only for the personal and confidential use of the recipient(s) named above. This message contains information that may be an attorney-client

Release Notice shall be subject to Publisher's good-faith independent verification. For the purposes of this paragraph 9.02(b), the "Claim" shall mean the infringement/interpolation claim sent to you on behalf of Barry White Family Trust on May 7, 2024 alleging that you and the other songwriters of "Like That" embodied a portion of the musical composition titled "I'm Gonna Love You Just A Little More, Baby" in "Like That."

# EXHIBIT C

There is $425,000 of the Backend Advance remaining because SMP prepaid $25,000 in December 2024 to Fox Rothschild per Rodney's request.

The lawyer will need to be retained (subject to SMP's prior written approval) in advance of the May 16 deadline for service of discovery requests. Once retained, the lawyer should send their invoices to both Rodney and SMP, and SMP will pay the lawyer directly, subject to Rodney's prior signature on additional prepayment acceptance agreements (in the same form as the one he signed in December). Please note that SMP will not contribute to any claims or lawsuits that Rodney may seek to pursue against

KEY-01863

Epic Records, Sony Music Entertainment, any other Sony entity, or anyone else affiliated with "Like That."

Please let us know by the end of the week the name(s) of the New York lawyers Rodney would like to consider retaining to defend him.

Please don't hesitate to contact us if

EXHIBIT D

EXHIBIT D

# Freundlich Law, APC
16133 Ventura Blvd.
Suite 645
Encino, CA 91436 USA

Ph:(310) 275-5350          Fax:(310) 275-5351

Rodney Oliver                                              November 6, 2025
CA
USA

File #:      940-001
**Attention:**                                             Inv #:       3117

**RE:**     Barry WHite Trust Litigation

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| Oct-07-25 | Call with DW and JH re various matters; call with Rodney O re same; research Rule 11 and intervention and separate claim against Key | 1.00 | 725.00 | KDF |
| | Settlement Discussion | 0.50 | 225.00 | HHR |
| Oct-08-25 | Reviewed case status | 0.10 | 57.50 | JAG |
| Oct-09-25 | Dealing with Rodney Aff. and Rule 11 motion | 0.50 | 362.50 | KDF |
| Oct-10-25 | Review Warner production and further analyze title issues | 1.00 | 725.00 | KDF |
| | Discovery Review re: chain of title | 0.50 | 225.00 | HHR |
| | Reviewed third-party discovery | 0.10 | 57.50 | JAG |
| Oct-13-25 | Working on BASS claim | 0.50 | 362.50 | KDF |
| | Call with attorney representing "Bass" artist | 0.20 | 90.00 | HHR |
| | Reviewed case status | 0.10 | 57.50 | JAG |
| Oct-23-25 | Bifurcation, Sanctions in Abeyance Research; Drafting Responses to Weber's Letters | 3.30 | 1,485.00 | HHR |
| Oct-24-25 | Researching Chose in Action and Copyright | 0.80 | 360.00 | HHR |

| Date | Description | Hours | Amount | Atty |
|---|---|---|---|---|
| Oct-27-25 | Dealing With Key emails and calls with Rodney and Anterinie and ___ to try to resolve Key; calls with D Weber re Rodney being brought into Case 2 | 3.20 | 2,320.00 | KDF |
| | Case Discussion, Call with Client and Atron, Drafting Complaint Against Necole | 3.30 | 1,485.00 | HHR |
| | Reviewed emails re: case status; reviewed case documents; discussed case with K. Freundlich | 0.20 | 115.00 | JAG |
| Oct-28-25 | Research file and draft motions for intervention and to dismiss Key lawsuit | 6.20 | 4,495.00 | KDF |
| | Reviewed emails re: case status | 0.10 | 57.50 | JAG |
| | Reviewed case status | 0.20 | 115.00 | JAG |
| Oct-29-25 | Review Court decision and revise MTD and MTI | 2.50 | 1,812.50 | KDF |
| | Meeting with Bennett | 0.60 | 270.00 | HHR |
| | Reviewed motion to dismiss and motion to intervene; discussed case with K. Freundlich | 0.80 | 460.00 | JAG |
| | Reviewed case status | 0.10 | 57.50 | JAG |
| Oct-30-25 | Review Key new motion; working on MTD and MTI; call with DW re meet and confer and respond to settlement proposal; Call with Rod and Anterine | 4.20 | 3,045.00 | KDF |
| | Dorothy Weber call, Rodney O call, Case Discussion | 1.10 | 495.00 | HHR |
| | Reviewed motions; discussed case with K. Freundlich | 0.80 | 460.00 | JAG |
| Oct-31-25 | Working on MTD and Intervention; Preparing for expert depos | 1.30 | 942.50 | KDF |
| | Editing Motions to Intervene, Dismiss | 1.20 | 540.00 | HHR |
| | Reviewed motions; discussed case with K. Freundlich | 2.70 | 1,552.50 | JAG |

| Date | Description | Hours | Amount | Atty |
|---|---|---|---|---|
| Nov-02-25 | Deal; with N Key emails; meet with Rodney O in Vegas | 1.00 | 725.00 | KDF |
| Nov-03-25 | Prepare for N Key meet and confer and Key Meet and confer re N Key subpoena; review notes from J Bennett | 2.00 | 1,450.00 | KDF |
| | Drafting, Editing Motions to Interview and Dismiss; Meet and Confer with Necole, Dorothy | 4.40 | 1,980.00 | HHR |
| | Reviewed case law; discussed case with K. Freundlich; reviewed emails re: case status | 1.50 | 862.50 | JAG |
| Nov-04-25 | Working on Motion to intervene in Case 2; begin preparing for expert deposition while simultaneously trying to settle matter; calls with client, DP of SMP and DW and JH of Weber firm and settle case; begin outline of SA | 5.50 | 3,987.50 | KDF |
| | Drafting, Editing Motion to Dismiss | 4.80 | 2,160.00 | HHR |
| | Reviewed case law and discussed case with K. Freundlich | 3.00 | 1,725.00 | JAG |
| Nov-05-25 | Preparing for depositions and then holding with settlement; draft settlement agreement and then switch to revising DW's agreement; emails and calls all around; meet with RO | 6.20 | 4,495.00 | KDF |
| | Editing, Finalizing Motions to Intervene and Dismiss, Rodney Declaration | 4.70 | 2,115.00 | HHR |
| | Totals | 70.20 | $42,455.00 | |

## DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| Oct-12-25 | ASAP Inv# 11460: Epay confirmation CB41D8ZN | 189.40 |
| | Totals | $189.40 |

| | |
|---|---|
| **Total Fee & Disbursements** | **$42,644.40** |
| Previous Balance | 55,391.60 |
| Previous Payments | 55,391.60 |

|  |  |
|---|---:|
| **Balance Now Due** | **$42,644.40** |

TAX ID Number    92-1512310

## PAYMENT DETAILS

| | | |
|---|---|---:|
| Oct-14-25 | On Account | 55,391.60 |
| | **Total Payments** | **$55,391.60** |

## TRUST STATEMENT

|  |  | Disbursements | Receipts |
|---|---|---|---|
|  | Trust Balance Forward |  | 50,000.00 |
| Oct-14-25 | Received From: Sony Music Pub Co<br>Rodney O account |  | 55,391.60 |
|  | Paid To: Freundlich Law, APC<br>On Account | 55,391.60 |  |
|  | Total Trust | $55,391.60 | $105,391.60 |
|  | **Trust Balance** |  | **$50,000.00** |