# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

NÉCOLE KEY,

Plaintiff,

v.

BARRY WHITE FAMILY TRUST, et al.,

Defendants.

Case No. 1:25-cv-03602 (DLC)

---

PLAINTIFF'S NOTICE OF SUPPLEMENTAL FILING / ERRATA

RE: INADVERTENTLY OMITTED ATTACHMENT

Plaintiff Nécole Key, pro se, respectfully submits this Notice to inform the Clerk of Court and the Honorable Denise Cote that an attachment was inadvertently omitted from Plaintiff's previously-filed Opposition.

1. On November 20, 2025], Plaintiff filed Plaintiff's Opposition to [Rodney Oliver's Motion to Intervene / Motion to Dismiss] at Dkt. 72.

2. Due to clerical oversight during the upload process, Plaintiff unintentionally left off a supporting attachment consisting of:

    (a) Plaintiff's completed Motion for Permission for Electronic Case Filing (Pro Se ECF Motion); and

    (b) Plaintiff's CM/ECF course completion certificate.

3. These materials were referenced and intended to be filed contemporaneously with Plaintiff's Opposition. They are submitted now as a supplemental attachment so the record is complete.

Accordingly, Plaintiff respectfully requests that the Clerk docket the attached PDF as a supplemental submission associated with Dkt 72, or as a stand-alone filing if the Clerk deems that procedure more appropriate.

Dated: November 22, 2025

Respectfully submitted,

/s/ Nécole Key

Nécole Key, Pro Se

451 Discovery Lane

Unit 321

Brea, CA 92821

necolekey@gmail.com

(626) 598-6647


CERTIFICATE OF SERVICE

I certify that on November 25, 2025, I served the foregoing Notice and omitted attachment on all counsel of record via the Court's ECF system.

/s/ Nécole Key

Nécole Key

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

NÉCOLE KEY,

Plaintiff,

v.

BARRY WHITE FAMILY TRUST, et al.,

Defendants.

**Case No. 1:25-cv-03602 (DLC)**

DECLARATION OF NÉCOLE KEY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO RODNEY OLIVER'S MOTION TO INTERVENE AND MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S STANDING

I, Nécole Key, declare as follows:

1. I am the Plaintiff in this action and submit this Declaration based on my personal knowledge. If called as a witness, I could and would testify competently to the facts stated herein.

2. I am a music rights manager and catalog administrator. For approximately three years prior to April 24, 2025, I served as Rodney Oliver's music rights manager and authorized agent for purposes of catalog recovery, chain-of-title reconstruction, licensing negotiations, and enforcement communications. My work was performed with Oliver's knowledge and approval.

3. At no time did I act as Oliver's attorney, nor did I ever present myself to any person or entity as Oliver's legal counsel. I repeatedly encouraged Oliver to retain counsel for matters requiring legal representation, including litigation. (See Exs. A–Q.)

4. My communications on Oliver's behalf were in my capacity as his rights manager and authorized agent, consistent with standard industry practice. Such communications included business demands, rights enforcement letters, and licensing communications. (See Exs. A–Q; AA; V; W; and FF.)

A. Plaintiff's Work Rebuilt and Increased the Value of Oliver's Catalog

5. When I began working with Oliver, his catalog was disorganized and undervalued. Critical chain-of-title information was missing or incorrect, registrations were fragmented, and royalties were not being properly collected.

6. Between approximately February 2021 and August 2025, I rebuilt Oliver's chain of title from primary sources. This work included confirming underlying compositions and masters, locating historic agreements, identifying PRO work IDs, IPIs/CAEs, ISWCs, publisher splits, and resolving conflicting registrations. (See Exs. A–Q and FF.)

7. During the period February 2021 through August 2025, I created and maintained detailed spreadsheets and documentation organizing Oliver's catalog, which enabled counterparties to verify ownership and exploitation rights. (See Exs. A–Q and FF.)

8. From February 2021 through August 2025, I corrected and/or initiated registrations with collecting entities and platforms, including [BMI/ASCAP/MLC/SoundExchange/others], enabling royalties that were not previously being paid to Oliver. (See Exs. A–Q; AA; V; and FF.)

9. Through these efforts conducted between February 2021 and August 2025, Oliver's catalog value increased dramatically—from offers in the tens of thousands to offers and negotiations exceeding $2.2 million for publishing alone, and a total catalog valuation in the multi-million-dollar range. Those offers did not exist before my chain-of-title reconstruction and enforcement work. (See Exs. A–Q; W; and FF.)

B. Plaintiff's Enforcement and Negotiation Work Created Royalties and Preserved Rights

10. From February 2021 through August 2025, I issued enforcement notices and demands to labels and publishers exploiting Oliver's works without accurate credit, proper licensing, or accounting, including demands for long-form agreements, split confirmations, and earnings statements. (See Exs. A–Q; AA; V; W; and FF.)

11. I negotiated licensing terms for uses of "Everlasting Bass" and related derivative works, including the "Like That" license, securing favorable publishing splits and backend terms for Oliver. (See Exs. A–Q; R; W; and FF.)

12. I also rejected coercive settlement demands that sought to strip Oliver of future licensing rights, including the August 9, 2024 demand that would have removed Oliver's authority to license his work on a going-forward basis. (See Ex. R; see also Exs. A–Q.)

13. My refusal to accept stripping terms preserved Oliver's long-term exploitation and ownership rights, and prevented forced divestment.

C. The April 24, 2025 Co-Ownership & Master Assignment Was Executed for Consideration and Protection

14. By April 2025, Oliver and I were both aware that corporate-aligned counsel and entities were attempting to isolate Oliver, pressure him into surrendering rights, and repudiate my work and authority.

15. Against that backdrop, on April 24, 2025, Oliver executed a signed written agreement transferring to me a 50% undivided co-ownership interest in the "Everlasting Bass" master recording (the "Co-Ownership & Master Assignment" / "Master Assignment"). (See Ex. S and DigiSigner Audit Trail.)

16. This agreement memorialized and ratified the reality that I had built and defended the value of the master and catalog, and that I was bearing substantial business and litigation risk in doing so.

17. The agreement was supported by consideration, including but not limited to my multi-year chain-of-title reconstruction, enforcement work, negotiations, and ongoing protection of Oliver's interests and the master's value. (See Exs. A–Q; AA; V; W; and FF.)

18. The Master Assignment also included a termination clause designed as a protective safeguard against the exact duress and coercion risks we anticipated once corporate-funded counsel entered the disputes. It was not intended as a retroactive escape hatch allowing opportunistic repudiation after my ownership vested and was relied upon.

19. After April 24, 2025, I continued to enforce the rights of the master as a co-owner in my own name, including insisting on a standing-first determination that required Defendants to prove trustee authority and chain of title before reaching the merits. (See Exs. A–Q and FF.)

D. Plaintiff Brings Claims in Her Own Right, Not as Oliver's Representative

20. I bring and maintain this action in my own right as a 50% co-owner of the "Everlasting Bass" master and as the party directly harmed by Defendants' conduct.

21. Oliver's motion attempts to re-cast my co-ownership as a terminable "agency" arrangement. That framing is false. My ownership is grounded in a signed writing satisfying 17 U.S.C. § 204(a), and it vests standing independent of any prior agency relationship. (See Ex. S.)

22. Even during the period I served as rights manager, Oliver approved my actions and relied on my expertise. To the extent Defendants cite my past agency to attack me, they

    are mischaracterizing legitimate rights-management work that Oliver requested and repeatedly ratified. (See Exs. A–Q.)

23. Defendants' and Oliver's current attempts to discredit or erase my work contradict the documentary record and the course of dealing between Oliver and me over multiple years.

E. Plaintiff Has Suffered Harm From the Conduct at Issue

24. Because of my work on Oliver's catalog and my insistence on enforcing rights in good faith, I have suffered direct financial and reputational harm, including loss of clients and income, public smears repeating statements from counsel filings, and interference with my professional relationships. (See Exs. DD and EE; see also Ex. Z.)

25. Those harms are not speculative; they are documented and form part of the damages I seek as a co-owner and wronged rights manager.

F. Conclusion

26. The record demonstrates that:

    a. I acted as an authorized rights-manager/agent in the past, not as legal counsel;

    b. My multi-year work rebuilt chain of title, generated and recovered royalties, and created measurable value;

    c. Oliver's April 24, 2025 signed Master Assignment transferred to me 50% co-ownership supported by consideration; and

    d. I sue in my own right as a co-owner, with independent standing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

November 20, 2025

Brea, California

Respectfully submitted,


/s/ Necole Key

Plaintiff Pro Se

451 Discovery Lane

Brea, CA 92821

necolekey@gmail.com

(626) 598-6647