UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NÉCOLE KEY,

                     Plaintiff.

v.

BARRY WHITE FAMILY TRUST et al.,

                     Defendants.

Case No. 1:25-CV-03602-DLC

REPLY IN SUPPORT OF RODNEY OLIVER'S MOTION TO INTERVENE

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 3

I. INTRODUCTION ..................................................................................................... 3

II. OLIVER'S MOTION IS TIMELY ............................................................................ 4

III. OLIVER CLEARLY ASSERTS A LEGALLY PROTECTABLE INTEREST THAT KEY'S ROGUE LITIGATION PLACES IN JEOPARDY ................................................................................................................ 5

IV. KEY'S § 204(a) ARGUMENT IS A DISTRACTION; THE STATUTE HAS NO BEARING ON TERMINATION OR STANDING ....................................... 5

V. KEY'S "TERMINATION CLAUSE DEFENSE" SECTION DOES NOT COMPORT WITH REALITY ......................................................................... 6

VI. NO EXISTING PARTY PROTECTS OLIVER'S RIGHTS ...................................... 7

VII. KEY'S ATTEMPT TO HAND-WAVE AWAY HER FORGERY IS DEEPLY TROUBLING AND STRIKES AT THE HEART OF THIS CASE ........................................................................................................................... 7

VIII. CONCLUSION .......................................................................................................... 8

**PRELIMINARY STATEMENT**

Oliver's Motion to Intervene is a prophylactic measure which is moot if the Court grants the Barry White Estate's Motion to Dismiss ("BWT's MTD") which Oliver contends it should. Oliver has submitted his declarations in support and in reply in further support of BWT's MTD which makes plain that Plaintiff Nécole Key lacks standing to bring this action. Key was Oliver's agent, and Oliver temporarily assigned certain sound recording (master) copyrights to Key which assignment has been terminated. Key has no standing (or substantive ground) to bring this action.

Oliver nonetheless submits this Reply to respond to the spurious arguments Key makes in opposition to his Motion to Intervene.

**I.      INTRODUCTION**

Key's Opposition to Oliver's Motion to Intervene is nothing more than an exhibition of Key's willingness to distort the truth.[1] The entirety of Key's 111-page deluge consists of misdirection and irrelevant factual background, without even an attempt to defend the fraud she perpetuated on the Court. As the Court wrote in its November 11, 2025 Order, Oliver's Motion to Intervene and the Barry White Family Trust's Motion to Dismiss "raise serious concerns of potential misconduct by Key that may lead to sanctions … [including inter alia] Key's possible creation of a fraudulent document to assert standing"; and further ordered "that Key is hereby advised that evidence of misconduct in this action may lead to sanctions, including dismissal of this action." (Dkt. 66). Key's response was simply to put scare quotes around the word forgery and gesture at it being a collateral issue. (Dkt. 72 at 7-8). As explained below, Key's forgery sits at the heart of this case, as she used the document to bolster her standing. Key's glib dismissal of the

---

[1] As Oliver is completing this Reply, Key again flouted the Court's rules and Order by late filing document number 73. To the extent this new document raises any viable new arguments, which it does not appear to, this document should be rejected as late filed and not considered by the Court.

Court's concerns underscores the casual, tenuous relationship she shares with the truth and the sustained disrespect she has shown the Court.

## II. OLIVER'S MOTION IS TIMELY

Key claims that Oliver's motion to intervene is untimely because "[i]ntervention now would force Plaintiff to litigate Oliver's collateral rescission and consideration disputes on a schedule the Court has stayed for a standing-first determination, expanding discovery, increasing cost, and undermining the threshold structure the Court imposed to ensure proportional, orderly adjudication." (Dkt. 72 at 5). Contrary to Key's assertions, the fact that Oliver terminated whatever claim Key had to ownership of "Everlasting Bass" is central to the issue of Key's standing. Whether Key retains any cognizable stake in "Everlasting Bass" turns entirely on the effect of Oliver's termination, which is precisely the threshold question the Court has forwarded here. Far from "expanding discovery," addressing the termination issue now sharpens and narrows the standing inquiry, ensuring the Court does not expend resources adjudicating claims Key no longer has any right to pursue.

Key also makes much of Oliver waiting "months to re-enter" this case. (Dkt. 72 at 5). This argument ignores the reality that Key's own escalating misconduct is what necessitated Oliver's return to this action. As Oliver's former agent and co-plaintiff, Key was obligated to act consistently with his instructions and interests; instead, once Oliver dismissed his claims, Key embarked on a months-long, unauthorized campaign to revive, distort, and weaponize those very claims for her own purposes. The full scope of the perversion of her role as agent, and the degree to which she has sought to undermine Oliver's ownership and litigation posture, only became clear through her recent filings. Under these circumstances, Oliver's decision to intervene now must be timely as Key forced his hand to re-enter to protect his rights and prevent further damage.

**REPLY IN SUPPORT OF RODNEY OLIVER'S MOTION TO INTERVENE**

### III. OLIVER CLEARLY ASSERTS A LEGALLY PROTECTABLE INTEREST THAT KEY'S ROGUE LITIGATION PLACES IN JEOPARDY

Key misstates the nature of Oliver's interest. The motion to dismiss is not the "interest" for Rule 24(a)(2) purposes. It is merely the procedural vehicle through which Oliver seeks to protect his actual, legally cognizable interests: (i) preventing a former agent, whose authority has been terminated, from continuing to purport to act on his behalf; (ii) safeguarding his sole ownership of a composition he wrote decades before he ever met Key; and (iii) stopping Key from using his name and prior association with her to advance a litigation campaign he does not endorse. Key's unauthorized prosecution of claims involving Oliver, his work, and his reputation creates a direct and immediate threat to those interests.

If left unaddressed, Key's conduct risks clouding title to "Everlasting Bass", distorting the record regarding his ownership and authorship, and tethering him publicly and legally to positions he rejects. Rule 24(a)(2) exists to prevent exactly this kind of misappropriation of a person's rights and identity, and Oliver's intervention is therefore not only proper but essential.

### IV. KEY'S § 204(a) ARGUMENT IS A DISTRACTION; THE STATUTE HAS NO BEARING ON TERMINATION OR STANDING

Key's detour into § 204(a), *Eden Toys*, and the validity of the Co-Ownership Agreement is entirely beside the point. (Dkt. 72 at 6. Oliver has never disputed that the document was executed; his lack-of-consideration argument goes to its enforceability, not its existence. None of the authorities Key cites pertain to the question currently before the Court: whether a terminated agent, whose claim to ownership of "Everlasting Bass" was terminated, may continue litigating in defiance of the principal's express instructions and her lack of ownership. Her reliance on copyright-transfer cases and statutory provisions governing written assignments is simply irrelevant to the intervention and standing issues that matter here. The Court need not be drawn into

adjudicating tangents that have no bearing on whether Key has standing to prosecute claims involving Oliver's property and name.

This section of Key's Opposition does contain the troubling assertion of "years of performance consistent with co-ownership." (Dkt. 72 at 6). The Co-Ownership Agreement was executed in April of 2025. To insinuate that she has been an owner of "Everlasting Bass" for "years" it another instance of the same pattern of misrepresentation that has shadowed this case from the outset, along with the forged "20%" document. Such claims are alarming given the Court's recent warning that evidence of misconduct may warrant dismissal. Key's audacity is astounding. This latest assertion underscores precisely why intervention is necessary: left unchecked, her narrative continues to drift further from the truth, threatening Oliver's rights.

## V. KEY'S "TERMINATION CLAUSE DEFENSE" SECTION DOES NOT COMPORT WITH REALITY

Key's description of the Co-Ownership Agreement's termination clause is utter fantasy.

The language in the Agreement is clear as day: "Rodney David Oliver shall have the exclusive right this Co-Ownership Agreement at any time by providing thirty (30) days' written notice to Necole Key." (Dkt. 72, Ex. S). Despite this unambiguity of this provision, Key conjures from thin air the proposition that "[t]he agreement includes a narrow termination clause allowing rescission only if Oliver were placed under duress or deception by a label, publisher, or attorney acting adversely to his interests." (Dkt. 72 at 4) and dedicates several paragraphs of Section IV of her Opposition elaborating on this fiction. (Dkt. 72 at 6).

This is a breathtaking act of invention that underscores the extent to which Key is willing to misrepresent the record to preserve a claim she knows she no longer has. The Co-Ownership Agreement contains no qualifier, no carveout, no duress-based exception, and certainly nothing resembling the elaborate "narrow termination clause" Key manufactures. The fact that she must rewrite the Agreement wholesale speaks volumes. It reveals not only her recognition that Oliver's

termination extinguished whatever standing she attempts to assert, but also her ongoing pattern of dishonesty that has already drawn concern from the Court. That Key would again resort to such mischaracterizations, in the face of plain contractual language, only reinforces why intervention is necessary and why her continued prosecution of this case cannot be trusted.

## VI. NO EXISTING PARTY PROTECTS OLIVER'S RIGHTS

While Oliver and the defendants may share the immediate objective of seeing Key's unauthorized lawsuit dismissed, that superficial alignment does not bar his intervention. Defendants owe Oliver no duty, have no stake in confirming or defending his sole ownership of "Everlasting Bass," and cannot be expected to police Key's ongoing misstatements and wanton disregard for Oliver's rights. Defendants' interests are not grounded in protecting Oliver from the harms Key continues to inflict upon him as she pressed forward with claims he repudiates.

And Key, once aligned with Oliver, now stands in direct and active opposition to him, advancing fabricated narratives about ownership and authority that place his interests squarely at risk. In this posture, no existing party can or will protect Oliver's interest; only intervention allows him to safeguard his work and legal position.

## VII. KEY'S ATTEMPT TO HAND-WAVE AWAY HER FORGERY IS DEEPLY TROUBLING AND STRIKES AT THE HEART OF THIS CASE

Key's handling of the forgery issue demonstrates a profound failure to grasp the gravity of her own misconduct. Her Opposition is littered with misstatements, evasions, and distortions, but nothing reflects her disregard for candor to the tribunal more starkly than her decision to place the word *forgery* in scare quotes, as if the falsified "20%" agreement were not exactly that. She offers no factual rebuttal and no attempt to clear her name. Instead, she simply waves the issue away, treating a serious allegation of fabrication as though it were an overblown technicality. That is incredibly alarming.

Equally misguided is Key's claim that the forgery is "collateral" and irrelevant to intervention of dismissal. It is not collateral at all: Key affirmatively relied on the fabricated document to inflate her purported ownership interest. That attempted use of a falsified writing goes directly to her asserted standing, her credibility, and her craven willingness to manipulate the record to maintain a lawsuit she knows she lacks authority to pursue. Her forgery is not a side issue, but rather a core component of why intervention is necessary and why her claims cannot proceed. For the foregoing reason, Oliver requests the Court grant this Motion to intervene and permit Oliver to file the attached Motion to Dismiss.

## VIII.   CONCLUSION

Key's Opposition only highlights why intervention and dismissal are necessary. Rule 24 exists for precisely these circumstances. For all the reasons set forth above, Oliver respectfully requests that the Court grant his Motion to Intervene.

Dated: November 25, 2025

                                            FREUNDLICH LAW, APC

                                            BY: /s/ Kenneth D. Freundlich
                                            Kenneth D. Freundlich
                                            16133 Ventura Blvd. Ste. 645
                                            Encino, CA 91436
                                            *Attorneys for [Proposed] Intervenor Defendant*
                                            *Rodney Oliver p/k/a Rodney O*